**WILLIAMS, GRAFFEO & STERN, LLC**
Brian P. Graffeo, Esq. (Attorney ID #026882004)
Stephen D. Santini, Esq. (Attorney ID # 363972021)
Courthouse Plaza
60 Washington Street, Suite 204
Morristown, New Jersey 07960
(973) 200-6350
Attorneys for Plaintiff
*Zonnia Lee*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZONNIA LEE,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELECTRIFAI, LLC; WHITE OAK FINANCIAL, LLC; WHITE OAK GLOBAL ADVISORS, LLC; EDWARD SCOTT; DIANE CLARK; SAMIR AGARWAL; and LUMING WANG<br><br>          Defendants. | <u>CIVIL ACTION</u><br><br><br>**COMPLAINT AND JURY DEMAND** |

### COMPLAINT

Plaintiff Zonnia Lee, by and through her attorneys Williams, Graffeo & Stern, LLC, complains of corporate Defendants ElectrifAi, LLC, White Oak Financial, LLC, and White Oak Global Advisors, LLC (collectively, "Corporate Defendants"); and individual defendants Edward Scott, Diane Clark, Samir Agarwal and Luming Wang (collectively, "Individual Defendants") as follows:

### FACTS COMMON TO ALL COUNTS

**A.  Parties, Jurisdiction, and Venue**

1.      Plaintiff Zonnia Lee ("Plaintiff"), born in 1956, is an experienced sales professional who currently resides in New Mexico.

2.      Upon information and belief, ElectrifAi, LLC ("ElectrifAi"), is a limited liability company formed under the laws of the state of Delaware and headquartered in the state of New Jersey.

3.      Plaintiff was employed by ElectrifAi in an executive sales capacity from May 2022 to August 2022 (the "Employment").

4.      Upon information and belief, Defendants White Oak Financial, LLC and White Oak Global Advisors, LLC (both entities referred to herein as "White Oak") are limited liability companies formed under the laws of Delaware.

5.      Upon information and belief, White Oak entities became the eventual owners of ElectrifAi and have appointed several members to ElectrifAi's board of directors (the "Board").

6.      Defendant Edward Scott ("ES") was the Chief Executive Officer at ElectrifAi and member of its Executive Committee throughout the duration of Plaintiff's Employment.

7.      As such, ES was the highest-ranking executive in ElectrifAi and subject only to the Board's oversight.

8.      Defendant Diane Clark ("DC") was General Counsel at ElectrifAi, and also served as its head of Human Resources ("HR") and a member of or advisor to its Executive Committee throughout the duration of Plaintiff's Employment.

9.      Defendant Samir Agarwal ("SA") was the Executive Vice President and Head of Products and Alliances at ElectrifAi as well as a member of its Executive Committee throughout the duration of Plaintiff's Employment.

10.     Defendant Luming Wang ("LW") was the Chief Technology Officer at ElectrifAI as well as a member of its Executive Committee throughout the duration of Plaintiff's Employment.

11.     Plaintiff was under the direction of several members of the Executive Committee throughout the duration of her Employment, including ES, DC, LW, and SA.

12.     This Court has jurisdiction over Plaintiff's Title VII, ADA, and FMLA claims as those claims arise under federal law. This Court has supplemental jurisdiction over Plaintiff's NJLAD claims pursuant to 28 U.S.C. § 1367 because these claims relate closely to the Title VII claims, having arisen from a common nucleus of operative fact such that all claims form part of the same case or controversy.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Corporate Defendants do business in Jersey City, New Jersey and some of the acts of discrimination and retaliation alleged occurred in New Jersey.

**B.  Nature of Action; Pre-Employment; Terms of Employment**

14.     This is an action to remedy the Defendants' unlawful retaliation, wrongful termination, harassment, hostile work environment, discrimination, intentional infliction of emotional distress, violations of the Conscientious Employees Protection Act, and otherwise fraudulent or wrongful acts.

15.     Prior to April 2022, over the course of multiple weeks, Plaintiff corresponded by email and over the phone with several members of ElectrifAi's Executive Committee (primarily ES but also DC, SA, and LW) about her potential employment in an executive sales capacity at ElectrifAi.

16.     Throughout these pre-employment discussions, Plaintiff was repeatedly advised that she would be selling "machine learning" and "artificial intelligence" (collectively, "AI") products for ElectrifAi but, despite Plaintiff's inquiries for more details about these products, was

never provided with information which proved they were functional and truly operating on "artificial intelligence".

17.     On April 9, 2022, Plaintiff was sent a written offer of employment (the "Offer Letter") to work at ElectrifAi as a Senior Account Manager. *See a true and accurate copy of the Offer Letter attached hereto as Exhibit A.*

18.     As reflected in the Offer Letter, Plaintiff was to receive a sign-on bonus of $10,000, eligibility for ElectrifAi's "Commission Plan", eligibility in ElectrifAi's equity plan, and of particular relevance to the herein suit, a base annual salary of $200,000 in addition to "medical, dental, short-term disability coverage and other employee benefits" generally offered by ElectrifAi.

19.     Plaintiff accepted ElectrifAi's offer and returned a signed Offer Letter several days later, around April 12, 2022, and would start working on May 2, 2022.

20.     By accepting ElectrifAi's offer of employment, Plaintiff effectively rejected several other job offers for similar positions at reputable companies in the process.

21.     Plaintiff received a copy of ElectrifAi's Code of Conduct shortly after accepting employment there and returned a signed copy on April 19, 2022. *See a true and accurate copy of the Code of Conduct attached hereto as Exhibit B.*

22.     ElectrifAi's Code of Conduct explicitly prohibits several forms of conduct, including "any act of physical or sexual assault, or any threatening, intimidating or harassing behavior against others, which relates in any way to employment with the Company"; "fighting or causing personal injury, or property damage, and other forms of disorderly conduct, including abusive or threatening language"; "obscene or abusive language toward any manager, employee, or client"; "sending or posting discriminatory, harassing, or threatening messages or images"; and

"retaliatory harassment, intimidation, threats, coercion, discrimination, or adverse employment decisions – taken because an employee has filed a complaint". *See Exhibit B, pages 11, 18, and 27.*

23.     ElectrifAi's Code of Conduct also explicitly provides that "individuals who believe they have been the victim of sexual or other unlawful harassment or discrimination, or believe they have witnessed sexual or other unlawful harassment or discrimination, should report their concerns to [HR], the Legal Department or any supervisor". *See Exhibit B, pages 26-27.*

24.     From when Plaintiff accepted ElectrifAi's offer through a week or two after Plaintiff's employment commenced, much of the sales staff who Ms. Lee was set to work alongside had their employment terminated and Plaintiff's title was changed to "Senior Director of Business Development".

25.     By May 19, 2022, Plaintiff's title was changed again to Senior Vice President of Global Sales and Strategy.

26.     Plaintiff was advised by ES that her title was changed again because her former title did not have enough "push" behind it to be of use while contacting clients.

**C.  Plaintiff's Employment and Termination**

27.     As Plaintiff started working more substantively, she became subject to the unlawful working environment at ElectrifAi, which was rife with offensive and discriminatory language and frequently subjected employees to verbal abuse and public admonishment.

28.     Plaintiff also came to find that the products offered by ElectrifAi were not working as intended and were not truly "AI" and very little, if any, of the advice she was providing was being implemented by ElectrifAi.

29.     Throughout Plaintiff's employment, she and many other members of ElectrifAi's sales team engaged in daily videoconference or telephone meetings that ES was in charge of as well as smaller, less inclusive internal calls with ES and other members of the Executive Committee like DC, SA, and LW.

30.     During the larger daily meetings, ES frequently resorted to using derogatory language, slurs, offensive, racially insensitive, stereotypical, and otherwise discriminatory comments in reference to ElectrifAi's staff and clients, almost always unprompted.

31.     During the smaller internal calls, ES regularly screamed at ElectrifAi's staff and occasionally screamed so loudly and so angrily that he was unable to form coherent words.

32.     ES's conduct and commentary, which Plaintiff was exposed to on an almost daily basis, made Plaintiff extremely uncomfortable throughout her employment.

33.     ES's conduct and commentary also clearly made other staff feel uncomfortable and led to a "chilling effect", as evidenced by the fact that several members of ElectrifAi's sales team who were supposedly "required" to be present for these daily meetings started refusing to attend or attended these meetings but with their attention focused elsewhere.

34.     Adding to Plaintiff's feelings of discomfort and frustration was the reality that her advice, which was seemingly lauded by the Executive Committee prior to her Employment, was rarely implemented; for instance, Plaintiff's suggestions that ElectrifAi use a "single point of truth" for internal communication or eliminate certain unproductive assistant staff positions was ignored.

35.     In addition to the severe and pervasive misconduct referenced above, during her employment, Plaintiff was advised by client-facing staff that several of ElectrifAi's "AI" products were not working; for instance, a point of contact for Abbott Laboratories advised that ElectrifAi's "Vendor Compression" product, which was supposed to scrape the internet for different

nomenclatures using artificial intelligence and/or machine learning, was not working as intended in an automated fashion.

36.    Plaintiff was subsequently advised by an ElectrifAi employee that the "AI" products being sold by ElectrifAi were not operated by artificial intelligence or machine learning but rather by manual labor, and that ElectrifAi could not afford to staff these products sufficiently to make them run as though they were actually powered by AI.

37.    Plaintiff also spoke to a different ElectrifAi employee who advised that what ElectrifAi was selling to one of its clients, Norwegian Cruise Line, included "services" like mass emailing but no product, despite the fact that Plaintiff had never been advised ElectrifAi sold "services".

38.    Slowly, over the course of Plaintiff's Employment, in spite of the fact that she was selling dysfunctional products, she had her responsibilities stripped by ES and SA and/or had other impediments put in place that restricted her ability to contribute to the company.

39.    For instance, during Plaintiff's Employment, ES initiated a new rule/policy which required the sales staff to seek Executive Committee approval before contacting any clients, which would have obviously made the process of contacting clients much more time consuming, delayed, and otherwise difficult to plan around.

40.    Plaintiff pushed backed on the policy requiring Executive Committee approval before contacting clients, but was threatened by ES to abide by the policy because "the only reason [she] eat[s] is because of him".

41.    On another occasion, even though ElectrifAi decided to attend a corporate networking event (ProcureCon) at Plaintiff's suggestion, she was excluded from all communications planning and strategizing for of this event.

42.     In almost direct contradiction to the prior policy requiring Executive Committee approval before contacting clients, SA took all of Plaintiff's accounts away from her and assigned them to another individual (his male friend) in sales while instructing Plaintiff that she was then to start spending her days focusing solely on making as many cold calls as possible to potential clients, at the expense of spending any time researching or otherwise preparing for these interactions and against Plaintiff's advice about how her time could be effectively used to benefit ElectrifAi.

43.     All of the above culminated in an email sent by ES to SA, DC, and other staff/members of the Executive Committee on August 22, 2022 where ES stated, after deriding the decision to have sales staff focus solely on making cold calls, that ElectrifAi's Executive Committee "need visibility [in]to Ms. Lee ASAP" and "Rahul will manage and handle her <u>one way or the other</u>." *See true and accurate copy of the email chain which includes the aforementioned email sent by ES on August 22, 2022, attached herewith as Exhibit B* (emphasis added).

44.     Plaintiff immediately objected to ES's email and the accusations that she was untrained and operating without visibility from leadership. *See Plaintiff's email response contained in Exhibit B.*

45.     Still feeling uncomfortable, in particular because of ES's past threats and the sentiment contained at the end of the aforementioned email chain that Plaintiff would be managed "one way or the other", she scheduled a meeting with HR representative Juliana Rosario to discuss the contents of this email.

46.     Ms. Rosario repeatedly assured Plaintiff throughout their meeting that the contents of their discussion would be strictly confidential, even though Plaintiff was concerned because Ms. Rosario's HR supervisor was DC.

47.     During the HR meeting, Plaintiff discussed ES's comment, how it made her feel uncomfortable, and how she believed his conduct constituted harassment.

48.     After Plaintiff's HR meeting Ms. Rosario assured Plaintiff that HR would explore the actions of [ES] and address them accordingly.

49.     Nevertheless, approximately three (3) hours after this HR meeting, that same day, Plaintiff's employment was terminated (the "Termination").

50.     Plaintiff asked for an explanation as to why she was terminated and was advised that her "position" had been "eliminated".

51.     Any supposition that Plaintiff was actually being terminated because her "position" had been "eliminated", however, was obviously pretextual.

52.     The above statements reflect that Plaintiff's official "position", which was changed three times within the first two weeks of her employment, was amorphous and her "title" or "position" was a fiction crafted to sound more authoritative or appealing to potential sales targets.

**D.  Post-Termination**

53.     Even after her Termination, Plaintiff has remained subject to the effects of ElectrifAi's intentional or negligent misconduct.

54.     Plaintiff has made numerous efforts to seek employment after her termination from ElectrifAi, all of which have been unsuccessful.

55.     Upon information and belief, many of Plaintiff's prospective new employers have contacted her former employer, ElectrifAi, to gather information about her qualification and/or an explanation for her 3-month tenure at their company (as reflected in Plaintiff's resume).

56.     Upon information and belief, ElectrifAi has been attempting to ruin Plaintiff's reputation using false or misleading statements which mischaracterize her tenure at ElectrifAi and her qualifications to continue working in an executive sales capacity for other companies.

57.     Plaintiff has also been denied unemployment benefits by the Colorado Department of Labor and Employment.

58.     Upon information and belief, ElectrifAi reported false, misleading, or otherwise erroneous information to various federal or state agencies, including but not limited to information about Plaintiff's state of residence.

59.     As a result of the defendants' actions, Plaintiff has been improperly deprived of any unemployment benefits.

60.     To date, Plaintiff has never been provided with a W-2 by her former employer ElectrifAi and is therefore unable to pay taxes.

61.     Since her employment, Plaintiff has required medical attention for two separate issues.

62.     The first issue is with regards to Plaintiff's foot, which was injured when Plaintiff fell in January 2023.

63.     As Plaintiff's Medicare health insurance did not provide her with coverage for non-hospital related medical charges until March 1, 2023, she had to pay out of pocket for medical attention to treat the foot injuries suffered in January 2023.

64.     Plaintiff also needed to go to the emergency room in February 2023 for an irregular heartbeat (atrial fibrillation) but had to decline further hospitalization due to cost.

65.     Plaintiff did not have any pre-existing conditions or prior medical history of heart-related issues but was advised that the symptoms she exhibited could have led (and may lead in the future) to a stroke.

66.     Plaintiff also paid for an initial consultation at a nearby podiatrist's office which occurred around this time out of pocket, although future visits were covered by Medicare.

**COUNT ONE**
**TITLE VII RETALIATION**
**(ALL DEFENDANTS)**

67.     Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

68.     Plaintiff's decision to meet with HR on August 22, 2022 to discuss her concerns about ES and SA's harassing conduct is not only statutorily protected, but also explicitly suggested in ElectrifAi's own Code of Conduct.

69.     Nevertheless, ElectrifAi took materially adverse employment actions against Plaintiff, terminating her employment and subsequently stifling her attempts to collect unemployment, Medicare benefits, and/or to obtain subsequent employment.

70.     Plaintiff's aforementioned protected activity was causally connected with the materially adverse employment actions she was subject to.

71.     The Corporate Defendants are liable under Title VII as Plaintiff's employer.

72.     The Individual Defendants are liable under Title VII as aiders and abettors of Plaintiff's retaliation.

73.     All Defendants actively participated in and/or acted with willful indifference to Plaintiff's statutorily protected rights.

74.     As a result of Defendants' retaliatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

75.     Plaintiff is also entitled to punitive damages and other remedies as appropriate under Title VII.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

**COUNT TWO**
**NJLAD RETALIATION**
**(ALL DEFENDANTS)**

76.     Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

77.     Plaintiff undertook the protected activity of meeting with HR to discuss the threatening email she had received previously.

78.     Plaintiff was subject to adverse employment action, including the termination of her employment at ElectrifAi, by Defendants.

79.     The adverse employment actions Plaintiff was subject to were causally connected with her protected activity.

80.     The Corporate Defendants are liable under the New Jersey Law Against Discrimination ("NJLAD") as Plaintiff's employer.

81.     The Individual Defendants are liable under NJLAD as aiders and abettors of Plaintiff's retaliation.

82.     All Defendants actively participated in and/or acted with willful indifference to Plaintiff's statutorily protected rights.

83.     As a result of Defendants' retaliatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

84.     Plaintiff is also entitled to punitive damages and other remedies as appropriate under NJLAD.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

<u>**COUNT THREE**</u>
<u>**CEPA VIOLATIONS**</u>
<u>**(ALL DEFENDANTS)**</u>

85.     Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

86.     Plaintiff undertook the protected activity of meeting with HR to discuss the threatening email she had received previously.

87.     Plaintiff was subject to adverse employment action, including the termination of her employment at ElectrifAi, by Defendants.

88.     The adverse employment actions Plaintiff was subject to were causally connected with her protected activity.

89.     The Corporate Defendants are liable under the Conscientious Employee Protection Act ("CEPA") as Plaintiff's employer.

90.     The Individual Defendants are liable under CEPA as aiders and abettors of retaliation against Plaintiff.

91.     As a result of Defendants' retaliatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

92.     Plaintiff is also entitled to punitive damages and other remedies as appropriate under CEPA.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

### COUNT FOUR
### TITLE VII HOSTILE WORK ENVIRONMENT
### (ALL DEFENDANTS)

93.     Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

94.     Plaintiff was repeatedly subject to and witness of offensive and discriminatory language, public lambasting and verbal abuse, and other threats to her livelihood while employed at ElectrifAi that made the work environment objectively and subjectively offensive.

95.     The offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed would not have occurred but for her gender, age, or other protected characteristic or that of her co-employees.

96.     The offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed was severe and/or pervasive enough to make a reasonable person of the same gender, age, or other like characteristic believe that the conditions of employment were altered.

97.     Defendants ES and SA are liable as the individuals who made these harassing and/or threatening comments to Plaintiff.

98.     The Corporate Defendants are liable as Plaintiff's employer who allowed said conduct to transpire.

99.     Defendants DC and LW are liable as aiders and/or abettors to the harassing comments made to Plaintiff by other members of the Executive Committee.

100.    As a result of Defendants' discriminatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

101.    Plaintiff is also entitled to punitive damages and other remedies as appropriate under Title VII.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

## COUNT FIVE
## NJLAD HOSTILE WORK ENVIRONMENT
## (ALL DEFENDANTS)

102.    Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

103.    Plaintiff was repeatedly subject to and witness of offensive and discriminatory language, public lambasting and verbal abuse, and other threats to her livelihood while employed at ElectrifAi that made the work environment objectively and subjectively offensive.

104.    The offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed would not have occurred but for her gender, age, or other protected characteristic or that of her co-employees.

105.    The offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed was severe and/or pervasive enough to make a reasonable person of the same gender, age, or other like characteristic believe that the conditions of employment were altered.

106.    Defendants ES and SA are liable as the individuals who made these harassing comments to Plaintiff.

107.    The Corporate Defendants are liable as Plaintiff's employer who allowed said conduct to transpire.

108.    Defendants DC and LW are liable as aiders and/or abettors to the harassing comments made to Plaintiff by other members of the Executive Committee.

109.    As a result of Defendants' discriminatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

110.    Plaintiff is also entitled to punitive damages and other remedies as appropriate under NJLAD.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

**COUNT SIX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ALL DEFENDANTS)**

111.    Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

112.    Plaintiff was repeatedly subject to and witness of offensive and discriminatory language, public lambasting and verbal abuse, and other threats to her livelihood while employed at ElectrifAi that were made intentionally by the individuals purveying this language.

113.    The offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed was so extreme and outrageous as to go beyond beyond all possible bounds of decency and be considered atrocious and utterly intolerable in a civilized community.

114.    The offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed caused Plaintiff significant emotional and mental distress.

115.    The emotional / mental distress Plaintiff has been enduring is so severe that no reasonable person could be expected to endure it.

116.    Defendants ES and SA are liable as the individuals who made these harassing comments to Plaintiff.

117.    The Corporate Defendants are liable as Plaintiff's employer who allowed said conduct to transpire.

118.    Defendants DC and LW are liable as aiders and/or abettors to the harassing comments made to Plaintiff by other members of the Executive Committee.

119.    As a result of Defendants' discriminatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

120.    Plaintiff is also entitled to punitive damages and other remedies as appropriate under NJLAD.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

## COUNT SEVEN
## FRAUDULENT MISREPRESENTATION
## (ALL DEFENDANTS)

121.    Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

122.    ElectrifAi, and several members of its Executive Committee, including the Individual Defendants, made numerous representations that ElectrifAi was selling AI products.

123.    ElectrifAi's representations regarding the AI products Plaintiff would supposedly be selling were material to her decision to work there.

124.    ElectrifAi and the Executive Committee members who made these representations to Plaintiff did so knowing that these supposedly "artificial intelligence" or "machine learning" products were actually reliant upon manual labor.

125.    ElectrifAi and the aforementioned Executive Committee members did so intending to mislead Plaintiff, and other employees, of the nature of the goods and services they are selling.

126.    These statements about ElectrifAi's supposedly "artificial intelligence" and "machine learning" products were justifiably relied on by Plaintiff in deciding to work for ElectrifAi.

127.   ElectrifAi's misrepresentations have not only harmed Plaintiff significantly, but also any of ElectrifAi's investors/owners and customers who were given the same false and fraudulent information.

128.   Plaintiff has also, subsequent to her termination from ElectrifAi, sought unemployment benefits and new employment.

129.   During the course of the appropriate unemployment agency's inquiries, the Corporate Defendants and/or Individual Defendants made misrepresentations about Plaintiff which affected her ability to collect these benefits.

130.   During the course of inquiries made by Plaintiff's subsequent employers, the Corporate Defendants and/or Individual Defendants also made misrepresentations about Plaintiff which affected her candidacy for these positions.

131.   Said misrepresentations were material to determining Plaintiff's eligibility for unemployment and/or new employment.

132.   ElectrifAi and the Individual Defendants who made these representations did so knowing that their comments were actually relied upon by said unemployment authorities and prospective employers.

133.   All Defendants made their misrepresentative comments intending to mislead the unemployment authorities and prospective employers investigating the same.

134.   These statements about Plaintiff's employment or termination were justifiably relied on in determining Plaintiff's eligibility for unemployment benefits and future employment.

135.   The Individual Defendants are liable as the individuals who made these fraudulent representations to and/or about Plaintiff.

136.    The Corporate Defendants are liable as Plaintiff's former employer and/or via *respondeat superior* for any fault assigned to Individual Defendant employees that is deemed to be in the scope of their employment.

137.    As a result of Defendants' fraudulent acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage.

138.    Plaintiff is also entitled to punitive damages and other remedies as appropriate.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

### COUNT EIGHT
### DEFAMATION
### (ALL DEFENDANTS)

139.    Plaintiff repeats and realleges each paragraph above as if fully set forth herein.

140.    Plaintiff has, subsequent to her termination from ElectrifAi, sought unemployment benefits in New Mexico and Colorado as well as subsequent employment.

141.    During the course of the appropriate unemployment agency and prospective employers' inquiries, ElectrifAi, and several members of its Executive Committee, including ES, DC, LW, and SA, have made false statements regarding Plaintiff's employment at their company or the terms of her termination.

142.    Said false statements were communicated to third persons.

143.    ElectrifAi and the Executive Committee members who made these representations did so either with intention, knowing, reckless, or negligent disregard for the truth.

144.    The Individual Defendants are liable as the individuals who made these fraudulent representations about Plaintiff.

145.    The Corporate Defendants are liable as Plaintiff's former employer.

146.    As a result of Defendants' defamatory acts, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage, including damage to her professional reputation.

147.    Plaintiff is also entitled to punitive damages and other remedies as appropriate.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages (compensatory, consequential, and punitive, including those related to Plaintiff's inability to collect unemployment or health insurance benefits), interest, attorney's fees, costs of suit, and other further relief as the Court deems just and appropriate.

**WILLIAMS, GRAFFEO & STERN, LLC**
*Attorneys for Plaintiff,*
*Zonnia Lee*


*Brian P. Graffeo*

BRIAN P. GRAFFEO, ESQ.

Dated: April 21, 2023

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues so triable.

**WILLIAMS, GRAFFEO & STERN, LLC**
*Attorneys for Plaintiff,*
*Zonnia Lee*


*Brian P. Graffeo*

Dated: April 21, 2023                          BRIAN P. GRAFFEO, ESQ.

## <u>DEMAND TO PRESERVE EVIDENCE</u>

Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's causes of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spreadsheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, Myspace, etc.) and any other information and/or data and/or documents which may be relevant to any claim or defense in this litigation. Failure to do so will result in separate claims for spoliation of evidence and/or for adverse inferences.

**WILLIAMS, GRAFFEO & STERN, LLC**
*Attorneys for Plaintiff,*
*Zonnia Lee*

*Brian P. Graffeo*

Dated: April 21, 2023                          BRIAN P. GRAFFEO, ESQ.