**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| ZONNA LEE, | : | |
| | : | **Civil Action No. 23-2239 (JXN) (JRA)** |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION** |
| ELECTRIFAI, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**NEALS**, District Judge:

This matter comes before the Court on Defendants ElectrifAi, LLC ("ElectrifAi"), White Oak Financial, LLC, White Oak Global Advisors, LLC (collectively, "White Oak"), Edward Scott ("Scott"), Diane Clark ("Clark"), Samir Agarwal ("Agarwal"), and Luming Wang's ("Wang") (collectively, "Individual Defendants") motions to dismiss Plaintiff Zonna Lee's ("Plaintiff") first amended complaint (ECF No. 27) ("Amended Complaint" or "Am. Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 32-34). Plaintiff opposed the motions; (ECF Nos. 41-43) and Defendants replied (ECF Nos. 47-48, 50). This Court has jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' Motions to Dismiss (ECF Nos. 32-34) are **GRANTED**, and the Amended Complaint (ECF No. 27) is **DISMISSED without prejudice** except for Counts One, Three, and Five, which are **DISMISSED with prejudice as to the Individual Defendants only.**

1

## I.      **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a Caucasian woman, is a former employee of ElectrifAi.[1]  (Am. Compl. ¶ 3).

Plaintiff was sixty-six years old while she worked for ElectrifAi.[2]  (*Id.*).  Over multiple weeks in

February, March, and April 2022, Plaintiff spoke with (i) Scott, ElectrifAi's Chief Executive

Officer, (ii) Clark, ElectrifAi's General Counsel and head of Human Resources, (iii) Agarwal,

ElectrifAi's Executive Vice President and Head of Products and Alliances, and (iv) Wang,

ElectrifAi's Chief Technology Officer, regarding her working in an executive sales capacity for

ElectrifAi.  (*Id.* ¶¶ 6-9, 16).   During these discussions, Plaintiff was "repeatedly advised"

ElectrifAi's products were machine learning or AI, and that her position would involve selling

these products.  (*Id.* ¶ 17).  Plaintiff also informed the Individual Defendants about her "medical

condition, which made it unsafe to receive a Covid-19 vaccine and thus unable to travel by plane."

(*Id.* ¶ 19).

On April 9, 2022, Plaintiff received an offer letter from ElectrifAi to work as a "Senior

Account Manager."  (*Id.* ¶ 20).  The offer letter provided, in relevant part: "This offer letter does

not create or imply any contract of employment, and your employment with the Company will at

all times be on an 'at-will' basis."  (ECF No. 27-1 at ¶ 8).

Plaintiff accepted ElectrifAi's offer and returned a signed Offer Letter on or around April

12, 2022, and started on May 2, 2022.  (Am. Compl. ¶ 23).  When she began working at ElectrifAi,

Plaintiff alleges her job title was changed to "Senior Director of Business Development" and then

again, on May 19, 2022, to "Senior Vice President of Global Sales and Strategy."  (*Id.* ¶¶ 34-35).

Plaintiff alleges Scott advised her the title was changed a third time "because her former title(s)

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true.  *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).
[2] Plaintiff alleges ElectrifAi is owned by White Oak.  (Am. Compl. ¶ 11).

did not have enough 'push' behind them to be of use while contacting clients."  (*Id.* ¶ 36).  Other than the change of title, her position was identical in all "material respects," including her pay and benefits.  (*Id.* ¶ 37).

Plaintiff further alleges her efforts to make sales were "significantly hindered" from the beginning.  (*Id.* ¶ 40).  Plaintiff was not provided "specific information" about how ElectrifAi's products worked.  (*Id.*).  Additionally, the Executive Committee took prospective clients away from the sales team when prospective clients indicated they were interested in purchasing ElectrifAi's products.  (*Id.* ¶ 42).

Further, while working for ElectrifAi, Plaintiff alleges she learned information about ElectrifAi's dysfunctional and fraudulent products.  (*Id.* ¶¶ 49-53).  For instance, Plaintiff was advised by "client-facing staff" that several of the machine learning/AI products "were not working properly."  (*Id.* ¶ 49).  Thereafter, Plaintiff was advised by an ElectrifAi employee that the products "were not actually operated by machine learning or artificial intelligence but rather by manual labor, and that ElectrifAi could not afford to staff these products sufficiently, resulting in several products losing functionality."  (*Id.* ¶ 50).  Additionally, Plaintiff was informed by another ElectrifAi employee that ElectrifAi was actually selling services, rather than products, like the one using machine learning/AI.  (*Id.* ¶ 51).

Plaintiff also alleges the Individual Defendants disregarded her advice to (i) utilize standardized systems for data storage, communications, and customer relationship management ("CRM"); (ii) hire a Salesforce Administrator to design a customized CRM system; or (iii) replace or reduce the number of unproductive assistants.  (*Id.* ¶¶ 54-66).  Additionally, Plaintiff alleges she was provided "contradictory instructions" that restricted her ability to properly perform her position and left her "guessing" what was expected by ElectrifAi.  (*Id.* ¶¶ 73-88).

Moreover, Plaintiff alleges the work environment at ElectrifAi "was incredibly hostile in that she was subject to rampant discriminatory, offensive, threatening language used by executives." (*Id.* ¶89). During daily videoconference or telephone meetings that Scott oversaw and "less inclusive internal calls" with the Individual Defendants, Plaintiff alleges Scott regularly made "comments that were discriminatory on their face" and reflected "an obvious disdain for people of certain races, sexes, disabilities, and ages." (*Id.* ¶¶ 90-91). For instance, in a client meeting, Scott asked a potential client: "Are you Iranian?" (*Id.* ¶ 92). Additionally, Scott "admonished Plaintiff in front of a large group of ElectrifAi employees as being 'too stupid to understand' something he mentioned." (*Id.* ¶ 97). Scott also regularly and publicly screamed at certain members of ElectrifAi's sales team. (*Id.* ¶ 99).

On August 21, 2022, Plaintiff sent the Individual Defendants an email outlining the status of her calls made the previous Friday and upcoming email campaigns. (*See* ECF 27-3 at 5-6). After Agarwal and Wang responded with follow-up questions and recommendations, Scott sent an email regarding ElectrifAi's "target list" and potential clients to contact. (*Id.* at 3-5). Scott also stated:

> If I told you the amount of time it takes me to penetrate you would be shocked. It's starts with a hook of what I call "industrial logic" as to why someone should take a meeting.. (sic) If you think you are good to send an untrained inside sales executives with a random email who does not understand the client's business and exactly how NLP, CV and Machine Learning can quickly drive value – you're kidding yourself. There has to be basic prep and I have not seen the sales team do that. Talk to every person who responded to me and they will invariably say "there was something that struck a chord in Ed's note or phone call".

> It's not done by chance. It's preparation.

> We need visibility to Ms. Lee ASAP. Rahul will manage and handle her one way or the other.

4

(*Id.* at 3).  On August 22, 2022, Plaintiff "immediately objected" to Scott's email and responded to the accusations that she was untrained and "operating without visibility from leadership."  (Am. Compl. ¶ 108; *see also* ECF No. 27-3 at 1-3).

Plaintiff remained "uncomfortable" and believed the email "was one of many instances of harassment perpetrated by the Executive Committee."  (Am. Compl. ¶¶ 109-10).  As such, Plaintiff scheduled an August 25, 2022 meeting with the Human Resources representative and discussed Scott's email and why Plaintiff believed it constituted harassment.  (*Id.* ¶¶ 112, 114).  The Human Resources representative indicated the contents of the meeting were "strictly confidential" and she "would explore the actions of [Scott] and address them accordingly."  (*Id.* ¶¶ 113, 115).  Approximately three hours after the meeting, Plaintiff was terminated and advised "her 'position' had been 'eliminated.'"  (*Id.* ¶¶ 116-17).

After her termination, Plaintiff alleges many of her prospective new employers would have contacted her supervisors at ElectrifAi to discuss her qualifications or explain her "abrupt tenure." (*Id.* ¶ 122).  Plaintiff alleges ElectrifAi has attempted to ruin her reputation by "using false or misleading statements which mischaracterize her tenure at ElectrifAi and/or her qualifications to continue working in an executive sales capacity for other companies." (*Id.* ¶ 123).  Plaintiff further alleges ElectrifAi has reported "false, misleading, or otherwise erroneous information to various federal or state agencies," which has deprived her of the ability to collect unemployment and insurance.  (*Id.* ¶ 125).  Additionally, Plaintiff alleges she was required to visit the hospital in February 2023 for an irregular heartbeat, which "was obviously related to the stress Plaintiff experienced while working at ElectrifAi and immediately after her Termination." (*Id.* ¶ 129).

On April 21, 2023, Plaintiff filed her initial complaint.  (ECF No. 1).  After ElectrifAi, White Oak, Clark, Agarwal, and Wang indicated they intended to file motions to dismiss for failure

to state a claim, (ECF Nos. 14, 22), Plaintiff filed an Amended Complaint on September 13, 2023 (ECF No. 27).  The Amended Complaint alleges ten causes of action: (i) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count One); (ii) retaliation under New Jersey's Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD") (Count Two); (iii) retaliation in violation of public policy under *Pierce v. Ortho Pharmaceutical Corp.*, 416 A.2d 505 (N.J. 1980) (Count Three); (iv) violation of the Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1, *et seq.* ("CEPA") (Count Four); (v) hostile work environment under Title VII (Count Five); (vi) hostile work environment under NJLAD (Count Six); (vii) intentional infliction of emotional distress (Count Seven); (viii) fraudulent misrepresentation (Count Eight); (ix) defamation (Count Nine); and (x) breach of the implied warranty of good faith and fair dealing (Count Ten).  (ECF No. 27).

On October 13, 2023, Defendants filed the pending motions to dismiss (ECF Nos. 32-34), which Plaintiff opposed (ECF Nos. 41-43), to which Defendants replied.  (ECF Nos. 47-48, 50).[3] This matter is now ripe for consideration.

## II.    <u>LEGAL STANDARD</u>

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[3] The Court will refer to the parties' respective motion papers as the following:
- White Oak's brief in support of its motion (ECF No. 32) will be referred to as "White Oak Br.";
- Plaintiff's opposition to White Oak's motion (ECF No. 42) will be referred to as "Opp'n to White Oak";
- White Oak's reply brief (ECF No. 50) will be referred to as "White Oak Reply";
- ElectrifAi, Clark, Agarwal, and Wang's brief in support of their motion (ECF No. 33) will be referred to as "ElectrifAi Br.";
- Plaintiff's opposition to ElectrifAi's brief (ECF No. 41) will be referred to as "Opp'n to ElectrifAi";
- ElectrifAi, Clark, Agarwal, and Wang's reply brief (ECF No. 47) will be referred to as "ElectrifAi Reply";
- Scott's brief in support of his motion (ECF No. 34) will be referred to as "Scott Br.";
- Plaintiff's opposition to Scott's brief (ECF No. 43) will be referred to as "Opp'n to Scott"; and
- Scott's reply brief (ECF No. 48) will be referred to as "Scott Reply".

(cleaned up).  On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).  A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In analyzing the sufficiency of a complaint, the Third Circuit requires that courts engage in a three-part inquiry: (1) recite the elements that must be pled in order to state a claim; (2) determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## III.      **DISCUSSION**[4]

### A.      **Plaintiff Fails to Plead Plausible Title VII Claims (Counts One and Five)**

The Court first considers Plaintiff's retaliation and hostile work environment claims under Title VII.  As a threshold matter, Title VII requires a plaintiff bringing an action against an employer to first file an action with the EEOC within 180 days of the alleged conduct.  42 U.S.C. § 2000e-5(e)(1); *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009) ("Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC.").

After filing a charge with the EEOC, a plaintiff must receive a "right to sue" letter before filing with the district court.  *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (stating the EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action); *Ditzel v. Univ.*

---

[4] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header.

*of Med. & Dentistry of N.J.*, 962 F. Supp. 595, 602 (D.N.J. 1997).  This requirement is necessary "to put the EEOC on notice of the claims," affording "it the opportunity to settle disputes" to avoid "unnecessary action in court."  *Webb*, 562 F.3d at 262.  "If a plaintiff brings suit under Title VII . . . before receiving a 'right-to-sue letter,' the matter may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies."  *Small v. Rahway Bd. of Educ.*, No. 17-1963, 2017 WL 1351400, at *2 (D.N.J. April 6, 2017) (citations omitted).

Here, the Amended Complaint contains no allegations that Plaintiff exhausted her administrative remedies, nor does Plaintiff provide any such representations in opposition to the motions to dismiss.  Accordingly, dismissal of the Title VII claims is warranted.  *Burg v. U.S. Dep't of Health and Human Servs.*, 387 F. App'x 237, 241 n.6 (3d Cir. 2010) (recognizing that failure to exhaust may be raised, in appropriate circumstances, on a motion to dismiss).  Because Title VII does not provide for individual liability, the Court dismisses with prejudice all claims within Counts One and Five against the Individual Defendants.[5]  If Plaintiff fails to amend this Complaint to include allegations that she has exhausted all administrative remedies prior to filing her Title VII claims, the remaining Title VII claims at Counts One and Five will be dismissed with prejudice.

### B.    Plaintiff Fails to Plead a NJLAD Retaliation Claim (Count Two)

ElectrifAi and the Individual Defendants contend that Plaintiff has not established a *prima facie* case of retaliation under NJLAD because she has failed to plead facts that she engaged in a protected activity.  (ElectrifAi Br. at 18-20; Scott Br. at 1).  In opposition, Plaintiff argues she has satisfied this burden through allegations that she had reported Scott's August 25, 2022 email to

---

[5] The Court finds the Title VII claims must be dismissed against the Individual Defendants because Title VII does not subject individual supervisory employees to liability.  *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII."); *Newsome v. Admin. Off. of the Cts. of the State of N.J.*, 51 F. App'x 76, 79 n.1 (3d Cir. 2002) ("It is settled that Title VII does not provide for individual liability."); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) ("[I]ndividual employees are not liable under Title VII").

Human Resources "under the belief this email was harassment."  (Opp'n to ElectrifAi at 8).[6]  As Plaintiff has failed to sufficiently allege that she engaged in a protected employee activity, the Court will dismiss the NJLAD retaliation claim.

The NJLAD prohibits an employer from taking any retaliatory action against an employee who engages in a protected activity.  N.J. Stat. Ann. § 10:5-12(d).  To state a *prima facie* case for retaliation under NJLAD, an employee must demonstrate: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action."  *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001).[7]  "An NJLAD retaliation claim can only succeed where the plaintiff shows that he or she faced reprisal for opposing conduct that the NJLAD prohibits, including discrimination on the basis of race, color, religion, sex, or national origin."  *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 676 (D.N.J. 2015) (internal quotation marks omitted).

"To engage in protected activity, the employee must identify what illegal employment practice is being opposed, by either implicitly or explicitly alleging that a protected characteristic was the basis for the adverse employment action."  *Phillip v. Starbucks Corp.*, 624 F. Supp. 3d

---

[6] As the Court discussed *supra*, Plaintiff's Title VII claims fail due to her failure to exhaust administrative remedies prior to raising these claims.  Notwithstanding, because the analyses for Title VII and NJLAD claims are the same, the Court's analysis also applies to her retaliatory discharge claim brought under Title VII.  *See Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (D.N.J. 2005) (explaining "[t]he analysis which is applied in Title VII claims is equally applicable to actions brought under other civil rights statutes, and thus the Title VII analysis applies to claims brought under the NJLAD as well." (internal citation omitted); see also *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 410 (D.N.J. 2003) ("As a general matter, the same basic principles apply when evaluating [a] [p]laintiff's claims under [Title VII and the NJLAD].").  Accordingly, the Court finds, for the reasons set forth below, that Plaintiff's Title VII retaliatory discharge claim fails even if she had exhausted all administrative remedies prior to filing her claim.

[7] Some courts explicitly include a fourth element in analyzing whether a plaintiff has stated a claim for retaliation in violation of the NJLAD—i.e., that plaintiffs show they are in a protected class.  *See, e.g.*, *Berdzik v. Physicians Endoscopy, LLC*, No. 20-11656, 2021 WL 3260857, at *7 (D.N.J. July 30, 2021); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010).  Other courts do not explicitly include this fourth element in their analysis. *See, e.g.*, *Abramson*, 260 F.3d at 286 (articulating three elements for a prima facie case of retaliation under Title VII and the NJLAD); *Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 695 (N.J. 1996) (same).

530, 546-47 (D.N.J. 2022) (internal quotation marks omitted). "'A general complaint of unfair treatment,' however, 'is insufficient to establish protected activity' under Title VII and the NJLAD." *Id.* at 547 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). "The 'complaint[ ] must be specific enough to notify management of the particular type of discrimination at issue in order to constitute protected activity.'" *Id.* (alteration in original) (quoting *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010)).

Here, the Court finds Plaintiff failed to plead a retaliation claim in violation of the NJLAD because her reporting of Scott's email does not constitute a protected activity. Plaintiff alleges she complained to Human Resources that the email was harassment. (Am. Compl. ¶¶ 114, 145). However, Plaintiff never alleges she believed the email to be harassment as a result of any NJLAD-protected characteristic.

Not every complaint, however, is considered a protected activity under the NJLAD. *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 107 (3d Cir. 2013). In *Ogunbayo*, the court found the plaintiff's complaints were not a protected activity because "she never mentioned any NJLAD-protected characteristics in her letters, let alone attempted to connect the alleged mistreatment to any such characteristic." *Id.* Instead, the court found it was merely a "'general complaint of unfair treatment'" that does not amount to a charge of illegal discrimination. *Id.* (quoting *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)). Similarly, here, Plaintiff's email to Scott complains about his views of her work performance but does not allege discrimination based on a NJLAD category (i.e., race, gender, religion, etc.). (*See* ECF No. 27-3).

Moreover, although Plaintiff described Scott's email as "harassment" in the Amended Complaint, the use of this word alone is insufficient to convert her conversation with Human

Resources about the email into a form of "protected activity." *Ogunbayo*, 542 F. App'x at 107 n.2; *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.").

Additionally, Plaintiff's allegation that the Individual Defendants violated NJLAD as "aiders and abettors of Plaintiff's retaliation" similarly fails. (Am. Compl. ¶ 149). As stated above, Plaintiff fails to allege a retaliatory discharge claim under NJLAD. Therefore, "because Plaintiff's underlying causes of action fail, there can be no claim for aiding and abetting in violation of the NJLAD." *Haddix v. Camden Cnty. Youth Det. Ctr.*, No. 13-1594, 2015 WL 3755023, at *6 (D.N.J. June 16, 2015) (citing *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 463 (D.N.J. 2009)); *accord Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 n.15 (3d Cir. 2004) (holding that, because plaintiff's underlying NJLAD claim fails, "any claim he brought against the individual defendants for aiding and abetting fails as well."). Accordingly, the Court dismisses Count Two without prejudice.

## C.    Plaintiff Fails to Plead a *Pierce* Retaliation Claim (Count Three)

ElectrifAi and the Individual Defendants next seek dismissal of Plaintiff's *Pierce* claim because it seeks to vindicate rights already protected under NJLAD and CEPA and fails to adequately plead sufficient facts to establish a wrongful discharge claim. ElectrifAi Br. at 21-26; Scott Br. at 1. In opposition, Plaintiff argues the *Pierce* claim is not precluded by her NJLAD and CEPA claims and adequately sets forth adequate factual allegations. Opp'n to ElectrifAi at 9;

Opp'n to Scott at 9-10. As Plaintiff fails to allege any public policy that Defendants purportedly violated, the Court will dismiss her *Pierce* claim.

In *Pierce*, the New Jersey Supreme Court explained that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Id.* at 512. "To establish a case for common law wrongful discharge, the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy." *Myers v. Advanced Stores Co.*, No. 19-18183, 2020 WL 2744632, at *6 (D.N.J. May 27, 2020) (citing *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1183 (N.J. 2008)).

Critically, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear mandate' of public policy that *Pierce* requires." *Hennessey v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 19-20 (N.J. 1992). A plaintiff must "prove not only that he or she complained about [an employer's] policy, but that his or her resulting discharge violated a clear mandate of public policy." *Tartaglia*, 961 A.2d at 1184. As such, "[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment." *Pierce*, 417 A.2d at 513.

As a threshold matter, there is no individual liability for a *Pierce* claim. *See Metzler v. Am. Transp. Grp., L.L.C.*, No. 07-2066, 2008 WL 413311, at *5 (D.N.J. Feb. 13, 2008) ("A plaintiff is only able to maintain a *Pierce* cause of action against his or her employer—not against individual employees.") (citing *O'Lane v. N.J. Dep't of Corr.*, 712 A.2d 1177, 1180 (N.J. Super. Ct. App. Div. 1998)). Accordingly, the *Pierce* wrongful discharge claim against the Individual Defendants is dismissed with prejudice.

As for ElectrifAi and White Oak, Plaintiff does not allege any public policy – let alone one that is clearly mandated – which was purportedly violated.  As such, Plaintiff's *Pierce* claim fails and Count Three will therefore be dismissed without prejudice as to ElectrifAi and White Oak.

### D.    Plaintiff Fails to Plead a CEPA Violation (Count Four)

ElectrifAi and the Individual Defendants next argue the CEPA claim should be dismissed because Plaintiff fails to allege facts showing that she reasonably believed ElectrifAi violated any law, rule, regulation, or public policy, that she engaged in whistle-blowing activity, or that the Individual Defendants retaliated against her.  (ElectrifAi Br. at 24-26; Scott Br. at 1, 3-4).  In opposition, Plaintiff argues she has alleged "an obvious CEPA claim here."  (Opp'n to ElectrifAi at 9-10; Opp'n to Scott at 9-10).  As Plaintiff has failed to identify – and the Court cannot discern – any law, rule, regulation, or public policy that Defendants allegedly violated, the Court will dismiss Plaintiff's CEPA claim with respect to all Defendants.

CEPA "creates a cause of action for an employee who is subjected to retaliation for reporting workplace misconduct."  *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 624 (N.J. 2013) (citing *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)).  The Supreme Court of New Jersey has emphasized that "CEPA is a remedial statute that 'promotes a strong public policy of the State' and 'therefore should be construed liberally to effectuate its important social goal.'"  *Id.* (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994)).

As relevant here, CEPA prohibits employers from taking "any retaliatory action against an employee because the employee does any of the following:"

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any . . . employee . . . of the employer . . .; or
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any . . . employee . . . of the employer . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any . . . employee . . . of the employer . . .; or
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any . . . employee . . . of the employer . . .; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3(a), (c).

To state a claim for a violation of CEPA, the plaintiff has the burden to establish that:

> "(1) he or she reasonably believed that his or her employer's conduct violat[ed] either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action."

*Chiofalo v. State*, 213 A.3d 900, 908 (N.J. 2019) (quoting *Dzwonar*, 828 A.2d at 900); *Lindenberg v. Arrayit Corp.*, No. 14-833, 2016 WL 659724, at *3 (D.N.J. Feb. 18, 2016) (citing *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999)) (applying the same test to N.J.S.A. 34:19-3(a)).

The first prong of a CEPA claim contains an "identification requirement." *Chiofalo*, 213 A.3d at 909. With respect to claims brought pursuant to N.J. Stat. Ann. § 34:19-3(a)(1) and (c)(1), "either 'the court or the plaintiff' must identify the statute, regulation, rule, or public policy that

closely relates to the complained-of conduct." *Id.* (quoting *Dzwonar*, 828 A.2d at 901). A plaintiff "need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy," as "[t]he goal of CEPA . . . is 'not to make lawyers out of conscientious employees.'" *Dzwonar*, 828 A.2d at 901 (quoting *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1015-16 (N.J. 1998)). Nevertheless, a plaintiff must "set forth facts that would support an objectively reasonable belief that a violation has occurred." *Id.* at 901. "[T]he trial court must [then] make a threshold determination that there is a substantial nexus between the complained-of conduct and [the] law or public policy [that the plaintiff or the court] identified." *Id.* "'[W]hen no such law or policy is forthcoming,' judgment can and should be entered for the defendant." *Chiofalo*, 213 A.3d at 909 (quoting *Dzwonar*, 828 A.2d at 901).

A similar requirement applies to claims brought under N.J. Stat. Ann. § 34:19-3(a)(2) and (c)(2), which focus on "fraudulent or criminal" activities. In *Chiofalo*, the court recognized that no previous decision had "mention[ed] any . . . obligation to identify some legal source rendering activity fraudulent." *Id.* at 910. "'[C]riminal' or 'fraudulent' activity," the court explained, "is often apparent and commonly recognizable," which "distinguishes claims [under Sections (a)(2) and (c)(2)] from CEPA's references in sections (c)(1) and (3) to violations of a more general 'law, or a rule or regulation promulgated pursuant to law' or of 'a clear mandate of public policy.'" *Id.* Nevertheless, the court concluded that "the better practice in CEPA actions brought under (c)(2)[ ] or . . . (a)(2)[ ] surely is to identify the statutory or other basis for claiming objected-to behavior is criminal or fraudulent." *Id.* Although the court does "not expect whistleblower employees to be lawyers on the spot[,] once engaged in the legal process, and with the assistance of counsel or careful examination by the court, . . . the legal underpinnings for claimed behavior that is perceived as criminal or fraudulent should be able to be teased out sufficiently for identification purposes."

*Id.* at 910.  In that regard, the court cautioned "that trial courts 'must be alert to the sufficiency of the factual evidence'"—allegations in this stage—"'and to whether the acts complained of could support the finding that the complaining employee's belief was a reasonable one.'"  *Id.* at 910 (quoting *Battaglia*, 70 A.3d at 626).  Even where the relevant conduct appears to be criminal or fraudulent on its face, "if a defendant questions the source of law relied on by the plaintiff, that source should be provided by the plaintiff."  *Id.* at 910-11.

Here, because Plaintiff appears to raise claims under Sections (a)(1) and (c)(1), and (a)(2) and (c)(2), the Court will address each pair of provisions separately.  With respect to each set of provisions, Plaintiff has failed to satisfy the first element of a CEPA claim – namely, her reasonable belief that Defendants' actions violated a law or public policy, or that they were criminal or fraudulent.

Plaintiff's claim pursuant to N.J. Stat. Ann. § 34:19-3(a)(1) and (c)(1) fails because she has not "identif[ied] [any] statute, regulation, [or] rule . . . that closely relates to the complained-of conduct."  *Chiofalo*, 213 A.3d at 908.  Even after Defendants raised this objection in their moving papers, Plaintiff still did not identify in her opposition any "law, or a rule or regulation promulgated pursuant to law," that she believed Defendants' conduct to have violated.  N.J. Stat. Ann. § 34:19-3(a)(1), (c)(1).  Plaintiff vaguely alleges that she attempted to report conduct "she reasonably believed constituted improper harassment, threatening behavior, or other discriminatory conduct in violation of relevant laws, rule[s], regulations, and public policies related thereto."  (Am. Compl. ¶¶ 165, 167).  Yet, Plaintiff has not identified any statute or rule "'that closely relates to'" such conduct.  *Chiofalo*, 213 A.3d at 909 (quoting *Dzwonar*, 828 A.2d at 901).  Further, other than a tangential connection to common law fraud, which is discussed below, the Court is unable to identify any "law, or a rule or regulation promulgated pursuant to law," which Plaintiff reasonably

could have believed Defendants violated in these circumstances. *Chiofalo*, 213 A.3d at 909 (quoting *Dzwonar*, 828 A.2d at 901). Accordingly, Plaintiff's claim under Sections (a)(1) and (c)(1) is dismissed without prejudice.

Plaintiff's claim pursuant to Sections (a)(2) and (c)(2), which rests on allegedly fraudulent conduct,[8] similarly fails to satisfy CEPA's identification requirement. Although *Chiofalo* recognized that no prior case had imposed an identification requirement under Sections (a)(2) and (c)(2), the court concluded that, "once engaged in the legal process, and with the assistance of counsel or careful examination by the court, . . . the legal underpinnings for claimed behavior that is perceived as . . . fraudulent should be able to be teased out sufficiently for identification purposes." *Id.* at 910. Here, Plaintiff has engaged counsel, filed a Complaint and Amended Complaint, and responded to Defendants' Motions to Dismiss. Yet, despite Defendants' argument in their moving papers that Plaintiff had failed to identify any specific law or policy that she believed Defendants had violated, Plaintiff does not refer to any statutory or common law, or rule or policy, in her opposition papers. *See id.* at 910-11 (noting that "if a defendant questions the source of law relied on by the plaintiff, that source should be provided by the plaintiff").

Further, although the Court can identify common law fraud as conceivably relevant to Plaintiff's claim, (*see* Am. Compl. ¶¶ 33-88), Plaintiff has not plausibly alleged a reasonable belief that Defendants committed fraud. Plaintiff need not establish that Defendants "actually violated the law," and ultimately a jury "must determine whether the plaintiff actually held such a belief and . . . whether [it was] . . . reasonable." *Dzwonar*, 828 A.2d at 902. However, Plaintiff "must set forth facts that would support an objectively reasonable belief that a violation has occurred," such "that there is a substantial nexus between the complained-of conduct" and the law at issue."

---

[8] Neither the Amended Complaint nor Plaintiff's opposition papers refer explicitly – or allude – to conduct that could qualify as "criminal" under Sections (a)(2) and (c)(2).

*Id.* at 901; *Chiofalo*, 213 A.3d at 910 ("[T]he relevant law or basis should be identified with enough specificity to allow the court to connect the facts to the reasonableness of the perception."). Indeed, to state a claim for fraud in New Jersey, a plaintiff must allege facts demonstrating, *inter alia*, "(1) a material misrepresentation of a presently existing or past fact[,] [and] (2) knowledge or belief by the defendant of its falsity." *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015).

> Here, the Amended Complaint alleges:
>
> (A) Plaintiff had her "position" changed three (3) times within her first three (3) weeks of employment, (B) was constantly refused specific information about the products she was selling, (C) was tasked with selling apparently nonfunctional or suboptimized products, (D) rarely had her advice implemented or seriously considered, (E) was excluded from projects that she was more qualified to assist with than others assigned thereto, and (F) was otherwise given contradictory, fluctuating and/or restrictive instructions, all of which suggested that Plaintiff was never given a fair opportunity to contribute to the best of her ability.

(Am. Compl. ¶ 166). These "conclusory statements" are insufficient, however, to support a reasonable belief that Defendants committed fraud. *Iqbal*, 556 U.S. at 678. Additionally, the August 22, 2022 email exchange does not reference any alleged fraud committed by Defendants. (*See* ECF No. 27-1). Rather, the email, at best, reflects a disagreement with Scott's view on Plaintiff's work. Plaintiff does not plead any facts supporting her belief that any of Defendants' representations were false or misleading, or that Defendants intended to mislead her. *See Hitesman v. Birdgeway*, 63 A.3d 230, 240 (N.J. Super. Ct. App. Div. 2013) (expressing that in ascertaining "whether the plaintiff possessed an objectively reasonable belief[,] . . . the required 'close relationship' between a claim and the authority identified cannot exist when an element necessary to a claim under that authority is not present."). Accordingly, Plaintiff has not stated a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. As such, the Court finds the CEPA claim fails and dismisses Count Four without prejudice.

**E.**   **Plaintiff Fails to Plead a NJLAD Hostile Work Environment (Count Six)**

ElectrifAi and the Individual Defendants next argue the hostile work environment claim must be dismissed because Plaintiff fails to allege any conduct that was directed at her because of an NJLAD-protected characteristic.  (ElectrifAi Br. at 26-28; Scott Br. at 3).  Additionally, ElectrifAi and the Individual Defendants contend the claim fails because "the alleged conduct does not rise to the level of severity or pervasiveness required to alter the conditions of Plaintiff's employment."  (ElectrifAi Br. at 28; Scott Br. at 1).  Further, the Individual Defendants assert Plaintiff fails to allege sufficient allegations that they are individually liable.  (ElectrifAi Br. at 28). In opposition, Plaintiff argues the Amended Complaint sets forth sufficient allegations that "the hostile work environment she experienced at ElectrifAi could have plausibly been the result of one of her protected characteristics," i.e., age, gender, or disability, and that the Individual Defendants are individually liable for such conduct.  (Opp'n to ElectrifAi at 10; Opp'n to Scott at 9).[9]  As the claim fails to allege any conduct that was directed at Plaintiff because of an NJLAD-protected characteristic or that rises to the level of severe or pervasive, the Court will dismiss the hostile work environment claim.

To state a hostile work environment claim under the NJLAD, Plaintiff must allege "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."

---

[9] As the Court discussed *supra*, Plaintiff's Title VII claims fail due to her failure to exhaust administrative remedies prior to raising these claims.  Notwithstanding, "[b]ecause the hostile work environment analyses for Title VII claims and NJLAD claims are 'strikingly similar,'" the Court's analysis also applies to her hostile work environment claim brought under Title VII.  *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005).  Accordingly, the Court finds, for the reasons set forth below, that Plaintiff's Title VII hostile work environment claim fails even if she had exhausted all administrative remedies prior to filing her claim.

*Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 625 (N.J. 2002) (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)).

The Court finds that Plaintiff fails to satisfy the first prong because the Amended Complaint does not include any allegations of conduct directed at her because of an NJLAD-protected characteristic. Rather, the Amended Complaint is replete with generalized allegations without specifically identifying that they would not have occurred but for Plaintiff's age, gender, or disability. For example, Plaintiff alleges during a daily meeting, Scott asked a potential client if he was Iranian, but does not allege she was Iranian. (Am. Compl. ¶ 92). Additionally, Plaintiff alleges Scott "admonished" her "in front of a large group of ElectrifAi employees as being 'too stupid to understand' something he mentioned." (*Id.* ¶ 97). Plaintiff alleges this statement was made "because of some protected characteristic," but fails to identify said characteristic. (*Id.* ¶ 98). Furthermore, while Plaintiff alleges Scott's August 22, 2022 email was "directed at Plaintiff because of some protected characteristic," the email does not make any reference to any NJLAD-protected characteristic and Plaintiff does not specify what "protected characteristic" she is relying upon. (*Id.* ¶¶ 111, 188).[10]

Even if the Court were to find Plaintiff sufficiently alleged this conduct would not have occurred but for her protected status, which it does not, the incidents of discrimination alleged by Plaintiff are not sufficient to sustain her hostile work environment claim. Under the test for evaluating a hostile work environment claim, "the second, third, and fourth prongs, while separable to some extent, are interdependent." *Ryan v. Twp. of Mount Olive*, 2010 WL 3933201, at *5 (N.J.

---

[10] Plaintiff also alleges she "presented multiple facts which reflect that she was subject to a bizarre work environment," including being given a "superficial title[], . . . told to sell dysfunctional and/or fraudulent products, . . . routinely disregarded by those less experienced at ElectrifAi, . . . was given contradictory instructions with regards to her day-to-day responsibilities, . . . and was supposedly terminated because her 'title' had been eliminated." (Opp'n to Scott at 9; *see also* Opp'n to ElectrifAi at 10). The Court finds that Plaintiff still fails to connect any of this purported conduct to an NJLAD-protected characteristic.

20

Super. Ct. App. Div. Sept. 24, 2010) (*citing Lehmann*, 626 A.2d at 453). "One cannot inquire whether the alleged conduct was 'severe or pervasive' without knowing how severe or pervasive it must be." *Lehmann*, 626 A.2d at 453. "The answer to that question lies in the other prongs: the conduct must be severe or pervasive enough to make a reasonable woman believe that the conditions of employment are altered and her working environment is hostile." *Id.* at 453-54.

To determine whether the conduct at issue is "severe or pervasive," the Court must consider "'the totality of the relevant circumstances,' including: '(1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.'" *Church v. Sears Holding Corp.*, 605 F. App'x 119, 125 (3d Cir. 2015) (quoting *Godrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008)). The "*sine qua non* of a hostile work environment claim is a workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (internal quotation marks omitted).

Viewed under that standard, the incidents of discrimination alleged by Plaintiff are not sufficient to sustain her hostile work environment claim. Plaintiff alleges the alleged conduct made her feel "uncomfortable." (*See* Am. Compl. ¶¶ 93, 109, 114). However, the Amended Complaint gives no information regarding the "instances" where Plaintiff felt uncomfortable and instead claims Scott "regularly made comments that were discriminatory on their face." (*Id.* ¶ 91). Even considering the alleged incidents, which Plaintiff does detail, the Court finds this fails to rise to the level of severe or pervasive to sustain a hostile work environment claim. *See Faragher v. City*

*of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "isolated incidents" of discrimination do not amount to a change in the "terms and conditions of employment").

Further, the Court finds the Amended Complaint fails to adequately allege the liability of the Individual Defendants.  (Am. Compl. ¶¶ 179, 181).  The NJLAD, through N.J. Stat. Ann. § 10:5-12(a), prohibits unlawful employment practices and discrimination by an employer.  *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004).  "[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism."  *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008).  However, "[t]he NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable."  *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 856 (3d Cir. 2016).  Since Plaintiff has not adequately alleged a hostile work environment claim, the Individual Defendants cannot be liable.  As such, the Court finds Plaintiff's hostile work environment claim fails and Count Six is dismissed without prejudice.

**F.    Plaintiff Fails to Plead an Intentional Infliction of Emotional Distress Claim (Count Seven)**

ElectrifAi and the Individual Defendants next argue Plaintiff fails to allege sufficient facts to establish a claim of intentional infliction of emotional distress because she has failed to plead facts demonstrating that their conduct was (1) intended to cause emotional distress, (2) extreme and outrageous, and (3) caused her severe emotional distress.  (ElectrifAi Br. at 29-31; Scott Br. at 4-5).  Plaintiff argues the allegations in the Amended Complaint adequately set forth an intentional infliction of emotional distress claim.  (Opp'n to ElectrifAi at 10-11; Opp'n to Scott at 10).  As Plaintiff fails to set forth factual allegations supporting the requisite elements, the Court will dismiss the intentional infliction of emotional distress claim.

To establish a *prima facie* claim for intentional infliction of emotional distress in New Jersey, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "New Jersey courts have found that the emotional distress must meet an 'elevated threshold' which is only satisfied in 'extreme cases.'" *Sebastian v. Vorhees Twp.*, No. 08-6097, 2011 WL 540301, at *8 (D.N.J. Feb. 8, 2011) (quoting *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001)).[11]

Here, Plaintiff fails to plead the requisite elements for an intentional infliction of emotional distress claim. First, Plaintiff must show Defendants intended "to do the act and produce emotional distress" or to act "recklessly in deliberate disregard of a high degree of probability that emotional distress would follow." *Buckley*, 544 A.2d at 863. Plaintiff's allegation that she was "repeatedly subject to and witness of offensive and discriminatory language, public lambasting and verbal abuse, and other threats to her livelihood while employed at ElectrifAi that were made intentionally by the individuals purveying this language" is conclusory and not supported by sufficient factual allegations. *See Iqbal*, 556 U.S. at 678.

Second, a plaintiff must show conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 544 A.2d at 863 (internal quotation marks

---

[11] Courts have consistently acknowledged it is difficult to establish intentional infliction of emotional distress in the employment context. *See, e.g.*, *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Witherspoon*, 173 F. Supp. 2d at 242; *Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219, 236 (D.N.J. 2000)*; Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991); *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 297 (N.J. Super. Ct. App. Div. 2001).

omitted). Here, Plaintiff alleges that "[t]he offensive language, verbal derision, and other threats Plaintiff was subject to or witnessed was so extreme and outrageous as to go beyond all possible bounds of decency and be considered atrocious and utterly intolerable in a civilized community." (Am. Compl. ¶ 196). This conclusory statement is not supported by any factual allegations. For instance, Plaintiff alleges that her employment was "abnormal" because her job title was changed multiple times, and she was unable to access information at ElectrifAi that would aid her job. At most, this reflects that the Individual Defendants acted "unjust, unfair and unkind," which is insufficient for alleging extreme and outrageous conduct.[12] *Fregara*, 764 F. Supp. at 956 (internal quotation marks omitted).

Finally, "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." *Buckley*, 544 A.2d at 863 (internal quotation marks omitted). Plaintiff alleges she suffered "significant emotional and mental distress" that has led to "ongoing issues, including Plaintiff's post-Termination treatment for an irregular heartbeat." (Am. Compl. ¶ 198). The Court finds Plaintiff has not alleged that her level of distress is so severe that no reasonable person could be expected to endure it. Accordingly, Plaintiff's intentional infliction of emotional distress claim fails and Count Seven is dismissed without prejudice.

**G.    Plaintiff Fails to Plead a Fraudulent Misrepresentation Claim (Count Eight)**

ElectrifAi and the Individual Defendants next seek dismissal of Plaintiff's fraudulent misrepresentation claim, which is premised on three categories of statements: (1) Defendants' statements to Plaintiff that ElectrifAi sells AI or machine learning products; (2) Defendants' statements to governmental unemployment agencies regarding Plaintiff; and (3) Defendants' statements to prospective employers about Plaintiff's tenure with ElectrifAi and her qualifications.

---

[12] *See also* Section III, E., *infra,* as to the analysis of Individual Defendants' alleged conduct.

(ElectrifAi Br. at 32-35; Scott Br. at 5). In opposition, Plaintiff argues she adequately alleged a fraudulent misrepresentation claim based on Defendants' misrepresentations that ElectrifAi sells AI or machine learning products. (Opp'n to ElectrifAi at 11; Opp'n to Scott at 11). As Plaintiff fails to set forth sufficient factual allegations that Defendants made false statements, the Court will dismiss the fraudulent misrepresentation claim.

The elements of a fraudulent misrepresentation claim include: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

"Fraud-based claims are subject to a heightened pleading standard." *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 360 (D.N.J. 2021). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) applies to fraudulent misrepresentation because it is, on its face, a fraud claim." *MHA*, 539 F. Supp. 3d at 350. "In order to satisfy Rule 9(b), a complaint must provide all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *United States v. Eastwick Coll.*, 657 Fed. App'x 89, 93 (3d Cir. 2016) (internal quotation marks omitted). But plaintiffs "need not, however, plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984)).

First, while Plaintiff alleges that Defendants made alleged misrepresentations to her that ElectrifAi sold AI or machine learning products, the allegations in the Amended Complaint are inconsistent. Plaintiff alleges during "Pre-Employment Discussions, [she] was repeatedly advised that ElectrifAi's products were all 'machine learning' or 'artificial intelligence' ('ML/AI') and that her job would involve selling the same." (Am. Compl. ¶ 17; *see also* Am. Compl. ¶ 206). Plaintiff further alleges she "became advised" that several of the products were "not working properly." (*Id.* ¶ 49). Additionally, Plaintiff alleges she was "subsequently advised" that the "products being sold by ElectrifAi were not actually operated by machine learning or artificial intelligence but rather by manual labor, and that ElectrifAi could not afford to staff these products sufficiently, resulting in several products losing functionality." (*Id.* ¶ 50). These inconsistent allegations do not support a finding of a false statement.

Additionally, Plaintiff's allegations that Defendants made alleged misrepresentations to governmental unemployment agencies regarding Plaintiff is flawed. Plaintiff alleges: "Upon information and belief, ElectrifAi also reported false, misleading, or otherwise erroneous information to various federal or state agencies, depriving Plaintiff of the ability to collect unemployment and insurance." (Am. Compl. ¶ 125; *see also* Am. Compl. ¶ 214). Plaintiff fails to plead affirmative misrepresentations with the level of specificity required under Rule 9(b). The Amended Complaint is absent factual allegations regarding the "various federal or state agencies," the "erroneous information" that ElectrifAi provided, who at ElectrifAi provided said information, or when said information was provided. Without any factual allegations providing such a level of specificity, Plaintiff has not adequately pled fraudulent misrepresentations based on Defendants' statement to governmental unemployment agencies.

Finally, Plaintiff's allegation that Defendants made alleged misrepresentations to prospective employers fails on similar grounds. Plaintiff alleges:

> Upon information and belief, many of Plaintiff's prospective new employers would have contacted Plaintiff's supervisors at ElectrifAi, as her most recent former employer, to inquire about her qualifications and/or an explanation for her abrupt tenure there.
>
> Upon information and belief, ElectrifAi has been attempting to ruin Plaintiff's reputation using false or misleading statements which mischaracterize her tenure at ElectrifAi and/or her qualifications to continue working in an executive sales capacity for other companies.
>
> This is apparent because, while Plaintiff has made numerous efforts to seek employment after her Termination from ElectrifAi, had been highly desirable in the industry prior to her tenure at ElectrifAi, and was otherwise objectively very qualified, all of Plaintiff's efforts to obtain new employment for almost an entire year since Termination were unsuccessful, so much so that Plaintiff was not even receiving callbacks or offered even a single interview, including for positions offering to pay less than half of what Plaintiff made at ElectrifAi.

(Am. Compl. ¶¶ 123-25; *see also* Am. Compl. ¶ 214). Plaintiff again fails to allege who specifically made the misrepresentations, however, or what those representations were. Rule 9(b)'s particularity requirement mandates more than a vague reference to unspecified representations potentially made regarding Plaintiff. Plaintiff cannot simply reference that statements were potentially made to prospective employers without providing who the statements were made to, what those statements were, or when the statements were made. As such, Plaintiff fails to allege facts that support plausible allegations of fraud by misrepresentations.

As Plaintiff fails to allege any specific false statement, Plaintiff fails to plead sufficient facts to plausibly allege actionable misrepresentations. Therefore, Plaintiff's fraudulent misrepresentation claim fails, and the Court dismisses Count Eight without prejudice.

### H.    <u>Plaintiff Fails to Plead a Defamation Claim (Count Nine)</u>

ElectrifAi and the Individual Defendants also argue the defamation claim should be dismissed because Plaintiff fails to set forth any facts supporting the elements of a defamation claim. (ElectrifAi Br. at 35-37; Scott Br. at 1, 4). In opposition, Plaintiff argues she adequately sets forth a defamation claim. (Opp'n to ElectrifAi at 10; Opp'n to Scott at 11). The Court disagrees. As Plaintiff has failed to adequately allege any false statements of fact that Defendants made concerning her, the Court will dismiss the defamation claim.

To sufficiently state her defamation claim, a plaintiff must adequately allege: (1) that a defendant made a false and defamatory statement concerning plaintiff; (2) that the statement was communicated to a third party and not privileged; and (3) when the plaintiff is a private individual, fault that amounts to negligence. *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204, 206 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 876 A.2d 885, 894-95 (N.J. Super. Ct. App. Div. 2005)). While "a defamation pleading does not need to cite precise defamatory statements, it must . . . provide sufficient notice to the other party of the allegations made against [it]." *Cristelli v. Filomena II, Inc.*, No. 99-2862, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999). The "pleading must allege the elements of defamation . . . to a degree of sufficient specificity." *Mangan*, 834 F. Supp. 2d at 204. In other words, a plaintiff must plead facts sufficient to identify "when, where, by which defendants and by what words, written or oral, plaintiff was defamed." *Cruz v. HSBC*, No. 10-135, 2010 WL 2989987, at *3 (D.N.J. July 26, 2010) (quoting *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 62 (N.J. Super. Ct. App. Div. 1986)).

The Court finds that Plaintiff has not adequately pled a defamation claim because Plaintiff fails to adequately allege any false statements of fact that Defendants made concerning her. (*See generally* Amended Compl.). Plaintiff alleges, after she was terminated, ElectrifAi and the

Individual Defendants made "false statements regarding Plaintiff's employment at their company, the terms of her termination, or Plaintiff's qualifications for future employment" to prospective new employers and "various federal or state agencies."  (Am. Compl. ¶¶ 225, 122-23, 125; *see also* Am. Compl. ¶¶ 122-23, 125).  Even accepting all of Plaintiff's allegations as true, Plaintiff's general allegations of "false statements" made to third parties is insufficient to support a claim of defamation without additional facts.  *See Russomanno v. Sunovion Pharms., Inc.*, No. 22-5032, 2023 WL 2649453, at *3 (D.N.J. Mar. 27, 2023) (dismissing defamation claim alleging the defendant "spoke about [the] [p]laintiff to potential employers in a 'disparaging way'" as insufficient without additional facts); *Veteran Relocation Project, LLC v. Borough of Bradley Beach*, No. 22-1817, 2022 WL 16822116, at *5 (D.N.J. Nov. 8, 2022) (dismissing defamation complaint alleging defendants "hurled abuse" at plaintiffs during a meeting for failure to plead sufficient facts); *Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (dismissing defamation claim for providing no information "beyond mere conclusory statements" and failing to plead facts sufficient to "identify the defamatory words, their utterer[,] and the fact of their publication").  The Amended Complaint fails to allege with enough specificity: (1) that any of the Defendants made false and defamatory statements concerning her; and (2) fault that amounts to negligence.  Since Plaintiff's allegations are not sufficient to demonstrate a plausible claim for relief, the Court dismisses Count Nine without prejudice.

## I.    <u>Plaintiff Fails to Plead a Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count Ten)</u>

ElectrifAi and the Individual Defendants further argue that the Court should dismiss the implied covenant of good faith and fair dealing claim because there is no contract between Plaintiff and Defendants.  Further, even if the Court were to find the Amended Complaint alleges a contract, there are insufficient facts to suggest they acted in bad faith with a bad motive.  (ElectrifAi Br. at

37-38; Scott Br. at 4).  Plaintiff argues the Amended Complaint adequately alleges an implied covenant of good faith and fair dealing claim based on her offer letter and "numerous allegations reflecting Defendant's bad faith acts."  (Opp'n to ElectrifAi at 11-12).  As Plaintiff has failed to adequately allege the existence of a contractual relationship between Defendants and herself, the Court will dismiss the breach of implied covenant of good faith and fair dealing claim.

In New Jersey, contracting parties are "bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract."  *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005).  While the concept of good faith is difficult to define in precise terms, "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party[.]"  *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) (internal quotation marks omitted).  To allege such a claim, a plaintiff must assert: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages.  *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler. Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002)).

As such, a claim based on a "[b]reach of the implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract*."  *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017) (emphasis in original); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention

finds no support in our case law.  In that respect, we agree with the court below that an implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached."); *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."); *see also Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996).

Here, Plaintiff alleges she "was contracted to work at ElectrifAi as an executive sales representative and was to be eligible for a commission in addition to her salary if certain performance standards were met."  (Am. Compl. ¶ 234).  However, this does not constitute an allegation of the existence of an express or implied contract.  Additionally, Plaintiff's reliance on the offer letter is similarly unavailing.  (*See* Opp'n to ElectrifAi at 11-12).  The offer letter expressly states it "does not create or imply any contract of employment, and [Plaintiff's] employment with the Company will at all times be on an 'at-will' basis."  (ECF No. 27-1 at ¶ 8).

Indeed, a breach of the implied covenant cannot occur in the absence of a contractual agreement.  *See Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 606-07 (D.N.J. 2003) ("[B]ecause the Court has concluded that the terms of this employee manual could not have given rise to an implied contract of employment, it necessarily follows that the manual's provisions do not contain an implied covenant of good faith and fair dealing."); *Barone v. Leukemia Soc'y of Am.*, 42 F. Supp. 2d 452, 457 (D.N.J. 1998) ("In the absence of a contract, there is no implied covenant of good faith and fair dealing which might be used as a basis for finding a right to continued employment."); *McDermott v. Chilton Co.*, 938 F. Supp. 240, 246 (D.N.J. 1995) ("Under New Jersey law, an implied covenant of good faith and fair dealing may not be invoked to restrict the authority of employers to fire at-will employees."); *D'Alessandro v. Varible Annuity Life Ins. Co. (VALIC)*, No. 89-2052, 1990 WL 191914, at *5 (D.N.J. Nov. 20, 1990) ("New Jersey courts have

uniformly rejected the proposition that there is an implied covenant of good faith and fair dealing between an employer and employee in an at-will situation.") (cleaned up).  As Plaintiff fails to allege the existence of a contract between Defendants and herself, her implied covenant of good faith and fair dealing claim fails.  Accordingly, the Court dismisses Count Ten without prejudice.

### J.    <u>Plaintiff Fails to Plead Any Plausible Claims Against White Oak</u>

Finally, White Oak also seeks dismissal of the claims asserted against it because there are no factual allegations that it participated in the complained-of conduct.  (*See generally* White Oak Br.).  Plaintiff disputes this contention and argues she has set forth sufficient factual allegations to establish White Oak could be liable as Plaintiff's employer or the employer of the Individual Defendants.  (Opp'n to White Oak at 9).  As Plaintiff fails to set forth sufficient allegations regarding White Oak's participation in the alleged misconduct, the Court dismisses the claims against White Oak.

As White Oak points out, the sole allegation in the Amended Complaint concerning it is:

Upon information and belief, Defendants White Oak Financial, LLC and White Oak Global Advisors, LLC (both entities referred to herein as "White Oak") are limited liability companies formed under the laws of Delaware who owned ElectrifAi, appointed several members to ElectrifAi's Board, and otherwise exerted control and/or oversight over ElectrifAi's operations throughout the duration of Plaintiff's Employment.

(Am. Compl. ¶ 11).

Although the Court has already dismissed each Count of Plaintiff's Amended Complaint based on various pleading deficiencies, the Court agrees, as a general matter, that the Amended Complaint is devoid of any factual allegations suggesting that White Oak was itself responsible for the purportedly unlawful conduct allegedly engaged by its subsidiary, ElectrifAi.  *See generally Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) ("[M]ere ownership of a subsidiary does not justify the imposition of liability on the parent."); *Marzano v. Computer*

*Science Corp. Inc.*, 91 F.3d 497, 513 (3d Cir. 1996); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."). Thus, to the extent Plaintiff chooses to amend any claims and to reassert any such claims against White Oak, the complaint must be amended to include facts that would allow the Court to draw the reasonable inference that White Oak is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

## IV.      CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss (ECF Nos. 32-34) are **GRANTED**, and the Amended Complaint (ECF No. 27) is **DISMISSED without prejudice**, except for Counts One, Three, and Five, which are **DISMISSED with prejudice as to the Individual Defendants only.**

An appropriate Order accompanies this Opinion.

DATED: 9/13/2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge